# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

IN RE: MIDWEST PROPERTIES OF SHAWANO, LLC,     CASE NO.: 10-31515-PP

          Debtor.                                      (Chapter 11)

## UNITED STATES TRUSTEE'S OBJECTION TO
## APPLICATION TO EMPLOY COUNSEL FOR THE DEBTOR

The United States Trustee, by Michelle S. Y. Cramer, Attorney for the United States Trustee, objects to the employment of counsel and states as follows:

1.    On July 20, 2010, the Debtor moved to employ counsel, Mr. Bruce Scott, under 11 U.S.C. §§ 327 and 1103, and Local Rule 2014.

2.    To understand whether Mr. Scott's employment is in the best interest of the Debtor the parties must understand the Debtor's relationship with a number of other related entities and Mr. Scott's involvement with those affiliates.

3.    As the court is aware, the Debtor has an open Chapter 11 case in the District of Delaware under case number 09-10880-KG. That case was jointly administered with a number of other related cases under the main caption of Dr. R.C. Samanta Roy Institute of Science & Technology, Inc. (SIST)(Case No. 09-10876).

4.    The other jointly administered cases were: U.S. Acquisitions & Oil, Inc. (USA&O)(09-10875-KG), Midwest Oil of Wisconsin, LLC (Case No. 09-10877-KG); Midwest Oil of Shawano, LLC (Case No. 09-10879-KG); Midwest Oil of Minnesota, LLC (Case No. 09-10878-KG); Midwest Properties of Shawano, LLC (Case No. 09-10880) and Midwest Hotels & Motels of Shawano, LLC (Case No. 09-10881-KG).

Attorney Michelle S. Y. Cramer
Office of the United States Trustee
517 E. Wisconsin Ave., Suite 430
Milwaukee, WI 53202
Phone (414) 297-4499
Fax   (414) 297-4478

5.     In the motion to request joint administration of these cases the movant, USA&O, stated the entities are owned and operated by SIST which owns, directly or indirectly, 100% of the equity in each of the debtors and has control of or is an affiliate of each of the other debtors.  Exhibit 1.

6.     Further, in Ms. Naomi Isaacson's affidavit as Chief Executive Officer of all of the jointly administered debtors, she stated Midwest Oil of Wisconsin, LLC; Midwest Oil of Shawano, LLC; Midwest Oil of Minnesota, LLC; Midwest Properties of Shawano, LLC and Midwest Hotels & Motels of Shawano, LLC, are wholly owned subsidiaries of SIST.  Exhibit 2.

7.     To further compound the relationship between these entities,  they all share the same tax identification number.

8.     It is important to know that Midwest Properties of Shawano is affiliated with Midwest Oil of Minnesota because Mr. Scott currently represents both Debtors.

9.     Despite Mr. Scott's affidavit that states he does not represent any other entity in connection with this case other than Midwest Properties of Shawano, LLC, *(see* Affidavit) his assertion is false.  Just days ago, on July 26, 2010, Mr. Scott filed a Chapter 11 bankruptcy for Midwest Oil of Minnesota, LLC, ("Midwest Oil") in the District of Minnesota.  As illustrated above, Midwest Oil is an affiliate of Midwest Properties of Shawano.  Midwest Oil has not yet filed an application to employ Mr. Scott in its case.

10.    In addition, the entwined relationship between Midwest Oil and Mr. Scott is further tangled with the knowledge that Mr. Scott and his wife, Carol Scott, personally guaranteed  Midwest  Oil's  debt  with  Vermillion  State  Bank  ("Vermillion")  in

September 2007 in order to forestall collection actions against Midwest Oil.

11. When Mr. and Mrs. Scott filed for a personal Chapter 7 bankruptcy on October 28, 2009, in the District of Minnesota, they listed Vermillion as a secured creditor (Case No. 09-37597).

12. In turn, Vermillion filed a complaint under 11 U.S.C. § 523(a)(2)(B) to determine the non-dischargability of its debt against the Scotts (Adv. No. 10-3021). Exhibit 3. The adversary is on-going.

13. The United States Trustee objects to the employment of counsel on the following bases:

  a. Mr. Scott did not reveal his representation of Midwest Oil, an affiliate of Midwest Properties.

  b. Mr. Scott is conflicted in his representation of Midwest Properties. Mr. Scott did not reveal he is a personal guarantor of debt held by Midwest Oil and therefore he has a conflict of interest in his representation of Midwest Oil (as noted above, an employment application has not been filed yet). Since Midwest Oil and Midwest Properties are affiliates he may also be conflicted in the current case.

  c. Mr. Scott is presumably a Minnesota attorney in good standing and authorized to practice law in that state. However, in accordance with General Local Rule 83.7(a)(3) of the Eastern District of Wisconsin, the Bankruptcy Court for the Eastern District of Wisconsin limits practice before it to attorneys admitted to the District Court of Wisconsin. Mr. Scott has made no showing that he is admitted to practice before the District Court of Wisconsin.

d.   Further, Mr. Scott's application asks to be employed as counsel for the Debtor, therefore, a *pro hac vice* appearance is inappropriate because his appearance is not limited or incidental in nature.

e.   Mr. Scott's hourly rate is not noted in the application or his affidavit.

f.   The application does not comply with Local Rule 2014(a) which requires "a specific recitation of the anticipated services to be rendered together with an estimate of the cost of each service."

g.   Mr. Scott states in his affidavit that he did work prior to the filing of the bankruptcy but he did not list any compensation he may have received in the one year prior to filing for bankruptcy on the Rule 2016(b) affidavit.

14.   The United States Trustee does not intend to file a brief in connection with this pleading but reserves the right to do so in the future.

Dated this July 29, 2010.

WILLIAM T. NEARY
UNITED STATES TRUSTEE


/s/_____
MICHELLE S. Y. CRAMER
Attorney for the United States Trustee

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | **:** CHAPTER 11 |
| | **:** |
| U.S. ACQUISITIONS & OIL, INC., | **:** NO. |
| | **:** |
| Debtor. | **:** |

| | |
|---|---|
| In re: | **:** CHAPTER 11 |
| | **:** |
| DR. R. C. SAMANTA ROY INSTITUTE OF | **:** NO. |
| SCIENCE & TECHNOLOGY, INC., | **:** |
| Debtor. | **:** |

| | |
|---|---|
| In re: | **:** CHAPTER |
| | **:** |
| MIDWEST OIL OF WISCONSIN, LLC, | **:** NO. |
| | **:** |
| Debtor. | **:** |

| | |
|---|---|
| In re: | **:** CHAPTER 11 |
| | **:** |
| MIDWEST OIL OF SHAWANO, LLC, | **:** NO. |
| | **:** |
| Debtor. | **:** |

| | |
|---|---|
| In re: | **:** CHAPTER 11 |
| | **:** |
| MIDWEST OIL OF MINNESOTA, LLC, | **:** NO. |
| | **:** |
| Debtor. | **:** |

| | |
|---|---|
| In re: | **:** CHAPTER 11 |
| | **:** |
| MIDWEST PROPERTIES OF SHAWANO, | **:** NO. |
| LLC, | **:** |
| Debtor. | **:** |

| | |
|---|---|
| In re: | **:** CHAPTER 11 |
| | **:** |
| MIDWEST HOTELS & MOTELS OF | **:** NO. |
| SHAWANO, LLC, | **:** |
| | **:** |
| Debtor. | **:** |

**MOTION REQUESTING JOINT ADMINISTRATION OF CHAPTER 11 CASES
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1015(b)
<u>AND LOCAL RULE OF BANKRUPTCY PROCEDURE 1015-1</u>**

U.S. Acquisitions & Oil, Inc. ("USA&O"), and its debtor affiliates (collectively the "Debtors"), hereby move this Court for entry of an order pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") authorizing the joint administration of the Debtors' Chapter 11 cases. In support of this motion (the "Motion"), the Debtors rely upon the Declaration of Naomi Isaacson in Support of First Day Motions and Applications (the "Isaacson Declaration")[1], which is incorporated herein by reference, and respectfully represent as follows:

<u>JURISDICTION</u>

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for relief sought herein is § 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1015-1 of the Local Rules of Bankruptcy for the District of Delaware (the "Local Rules"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

<u>BACKGROUND</u>

**A.      Procedural Background**

2. On the date herein (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3. The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No request has

---

[1]        Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in the Isaacson Declaration.

been made for the appointment of a trustee or examiner, and no statutory committee or trustee has been appointed in any of the Debtors' Chapter 11 cases.

**B.    Factual Background**

4.    The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Isaacson Declaration.

**RELIEF REQUESTED**

5.    By this Motion, the Debtors respectfully request the entry of an order authorizing the joint administration of their Chapter 11 cases, for procedural purposes only, pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Local Rules.

6.    The Debtors further request that the official caption to be used by all parties in all pleadings in the jointly administered cases be as follows:

| In re: | **:** | CHAPTER 11 |
|---|---|---|
|  | **:** |  |
| U.S. ACQUISITIONS & OIL, INC., *et al.*, | **:** | NO. |
|  | **:** |  |
| Debtors. | **:** |  |

7.    The Debtors submit that the use of this simplified caption, naming only "U.S. ACQUISITIONS & OIL, INC., *et al.*," without specific references to the remaining Debtors, the states of incorporation and the tax identification numbers will eliminate cumbersome and confusing procedures and ensure a uniformity of pleading identification.

8.    The Debtors also request that a docket entry reflecting the joint administration, in the form of that contained in the proposed Order accompanying this Motion, be made in each of the Debtors' cases.

**BASIS FOR RELIEF**

9.      This Court may order the joint administration of the estates of a debtor and an affiliate.  *See* Bankruptcy Rule 1015(b).  Bankruptcy Rule 1015(b) provides, in relevant part, that ("[i]f...two or more petitions are pending in the same court by ...a debtor and an affiliate, the court may order a joint administration of the estates."

10.     Pursuant to section 101(2) of the Bankruptcy Code, the term "affiliate" means an entity that directly or indirectly owns, controls or holds a company in a fiduciary or agency capacity; an entity directly or indirectly owning, controlling, or holding 20 percent or more of another's outstanding securities in a fiduciary or agency capacity; or an entity operating the business or substantially all of the property of the debtor under a lease or operating agreement.  *See* 11 U.S.C. §§ 101(2)(A), (B), (D).

11.     Bankruptcy Rule 1015(b) provides, in pertinent part, that if two or more petitions are pending in the same court against a debtor and an affiliate, the court may order a joint administration of the estates.  Fed. R. Bankr. P. 1015(b).

12.     Similarly, Local Rule 1015-1 provides that:

> An order for joint administration may be entered, without notice and an opportunity for hearing, upon the filing of a motion for joint administration pursuant to Fed. R. Bankr. P. 1015, supported by an affidavit . . . which establishes that the joint administration of two or more cases pending in this Court under title 11 is warranted and will ease the administrative burden for the Court and the parties.

*See* Local Rule 1015-1.

13.     USA&O is one of several entities owned and operated by Debtor, Dr. R.C. Samanta Roy Institute of Science & Technology, Inc. ("SIST"), which owns, directly or indirectly, 100% of the equity of each of the Debtors, and has control of or is an affiliate of each of the other Debtors.  As such, the Debtors are affiliates as that term is defined in section 101(2) of the Bankruptcy Code and as used in Bankruptcy Rule 1015(b).

14.     Joint administration of the Debtors' cases is appropriate because the Debtors intend to file with this Court numerous motions and applications.  As such, the joint administration of these cases, including the combining of notices to creditors of the respective estates, as well as the notices and hearings of all matters at the same time, including, without limitation, motions and adversary proceedings, will promote the economical, efficient and convenient administration of the Debtors' estates.   With seven (7) Debtors, each with its own case docket, the failure to jointly administer these cases would result in seven (7) duplicative pleadings repeatedly being filed.  Such duplication of substantially identical documents would be wasteful and would unnecessarily burden the clerk with paper.

15.     The rights of creditors of each of the Debtors will not be adversely affected by joint administration of theses cases.  Pursuant to Local Rule 1015-1, the joint administration "is for procedural purposes only and shall not cause a 'substantive' consolidation of the respective debtors' estates." *See* Local Rule 1015-1.  Joint administration will not affect substantive rights and nothing set forth herein should be deemed to be a request for substantive consolidation of the Debtors' Chapter 11 cases or estates.  To the extend that proofs of claims are required to be filed, each creditor will be entitled to file a claim against the particular estate or estates which owes it money unless substantive consolidation is requested and granted after notice and a hearing.  Finally, joint supervision of the administrative aspects of the Chapter 11 cases by the Court and the Office of the United States Trustee will be simplified.

16.     Further the entry of a joint administration order in multiple related cases is common and generally non-controversial in the Third Circuit.  *See* In re Leiner Health Prods., Inc., Case No. 08-10446 (KJC) (Bankr. D. Del. Mar. 12, 2008); In re Wickes Holdings, LLC, Case No. 08-10212 (KJC) (Bankr. D. Del. Feb. 5, 2008); In re Pope & Talbot, Inc., Case No. 07-

11738 (CSS) (Bankr. D. Del. Nov. 21, 2007); <u>In re Tweeter Home Entm't Group, Inc.</u>, Case No. 07-10787 (PJW) (Bankr. D. Del. June 13, 2007); <u>In re American Home Mortgage Holdings, Inc.</u>, Case No. 07-11047 (CSS) (Bankr. D. Del. Aug. 7, 2007).

## NOTICE

17.     No trustee, examiner or creditors committee has been appointed in this case. Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the Debtors; (iii) Nicolet National Bank; (iv) counsel to any Official Unsecured Creditors' Committee appointed in these cases, or the twenty (20) largest unsecured creditors of the Debtors, if an Official Unsecured Creditors' Committee has not been appointed; (v) the Internal Revenue Service and other government agencies to the extent required by the Bankruptcy Rules and the Local Rules, including any parties specifically effected by the relief sought herein.   In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.   As this Motion is seeking first day relief, notice of this Motion will be served as provided by Local Rule 9013-1(m).

## NO PRIOR REQUEST

18.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE the Debtors respectfully request that this Court enter an order (i) authorizing the joint administration of the Debtors' Chapter 11 cases and (ii) granting such other relief as the Court may deem just and proper.

COHEN, SEGLIAS, PALLAS,
GREENHALL & FURMAN, P.C.

BY:     **/s/ Eric John Monzo**
Eric John Monzo
Delaware ID No. 5214
Nemours Building
1007 Orange Street, Suite 1130
Wilmington, DE 19801
Tel: 302.425.5089
Facsimile: 302.425.5097

emonzo@cohenseglias.com
*Proposed Attorneys for the Debtor*

Dated: March 16, 2009

Steven D. Usdin, Esquire
PA ID No. 36381
30 South 17th Street, 19th Floor
Philadelphia, PA 19103

*Proposed Attorney for Debtor*

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| U.S. ACQUISITIONS & OIL, INC., *et al.* | : | NO. 09-            (_____) |
| | : | |
| Debtors. | : | |

## AFFIDAVIT OF NAOMI ISAACSON IN SUPPORT OF
## CHAPTER 11 PETITIONS AND FIRST DAY ORDERS

| | |
|---|---|
| STATE OF WISCONSIN | : |
| | : SS. |
| COUNTY OF SHAWANO | : |

Naomi Isaacson, being duly sworn, deposes and says:

I am the Chief Executive Officer of U.S. Acquisitions & Oil, Inc., Dr. R.C. Samanta Roy Institute of Science & Technology, Inc., Midwest Oil of Wisconsin, LLC, Midwest Oil of Shawano, LLC, Midwest Oil of Minnesota, LLC, Midwest Properties of Shawano, LLC, and Midwest Hotels & Motels of Shawano, LLC (collectively, the "Debtors"). I have been associated with the Debtors since 2000 and am familiar with the Debtors' operations, business affairs, and books and records.

The Debtors are corporations and/or limited liability companies incorporated in the State of Delaware and with a principal place of business at 1206 East Green Bay Street, Shawano, Wisconsin 54166.

The Debtors are in the business of property acquisition and management, sales of gasoline and petroleum products, and funding for charitable activities.

The Debtors have requested authority to continue to use certain of its pre-petition bank accounts and check stock as I have described below. To service its operations, the Debtors

1

maintain banking accounts that are reviewed and monitored by the Debtors' internal accounting staff. If the Debtors were required to close existing bank accounts and open new accounts, there would likely be a meaningful disruption in the Debtors' ability to collect and disburse funds in the ordinary course of its operations

The filing of the Debtors' chapter 11 petition has the potential to place a substantial strain on the Debtors' relationships with suppliers, vendors, and other creditors that are essential to the Debtors' continued operations. The delays, confusion and disruption in operations that will result if the Debtors are required to substitute new Debtor-in-possession bank accounts for all of its existing Bank Accounts as well as the various other accounts identified in the Motion would only further strain these important relationships. The Debtors believe that all parties in interest will be best served by preserving business continuity and avoiding operational and administrative paralysis that the closing of all of the bank accounts and opening of new ones may necessarily create.

Finally, the Debtors believe that they should be granted a 60-day waiver of the depository requirements of section 345 of the Bankruptcy Code, which requires the obtaining of a bond or other security for all deposits with FDIC-insured banks to the extent that the funds maintained with any given bank exceed the FDIC-insured limit of $100,000.

The Debtors' bank accounts are maintained with financially sound banking institutions. Requiring them to issue bonds in favor of the United States, as the statute requires, would cause substantial expense to the estate. In light of their financial strength, the Debtors believe such bonds are unnecessary. It is the Debtors' belief that granting this relief will facilitate a smooth and orderly transition of its operations into chapter 11 and minimize the disruption of its business affairs, without doing violence to either the policies of chapter 11 or the rules of this Court.

Debtor Dr. R.C. Samanta Roy Institute of Science & Technology, Inc., hereinafter ("SIST") was incorporated in 1992. Its mission was to bring the American system of education to the people of India and to build a school for the gifted and talented in the Midwest, ideally Wisconsin. With that vision in mind, in 2000, I was elected Chief Executive Officer. Beginning in 2000, Debtor SIST began acquiring a number of businesses. My role with the company was to oversee the business operations of the company. As more businesses and properties were acquired, for liability, tax, and financing purposes, we set up a number of wholly owned subsidiaries including the following Debtor companies: U.S. Acquisitions & Oil, Inc., Midwest Oil of Wisconsin, LLC, Midwest Oil of Shawano, LLC, Midwest Oil of Minnesota, LLC, Midwest Properties of Shawano, LLC, and Midwest Hotels & Motels of Shawano, LLC.

Due to Debtors' dynamic approach to business and Debtors' diverse business holdings, in the early years Debtors' businesses boomed and flourished. Since then, the Debtors have experienced a material degradation of its operations, resulting from intentional business interference, organized negative publicity, and the general economic downturn in the United States. Then in October 2008, Debtors were approached by an investor from Canada who was going to lend Debtors $10 million. As part of the deal, Debtors had to pay a significant advance fee. Debtors paid said fee on October 28, 2008. Unfortunately, it turned out to be worse than a scam and Debtors lost the advance fee. This incident started possibly the worst publicity imaginable which obviously has affected our businesses and our loan relationships.

Given their current financial situation, the Debtors concluded that it was in the best interest of their creditors and vendors to seek relief under Chapter 11 of the United States Bankruptcy Code.

The Debtors filed their Chapter 11 voluntary petitions for relief (the "Petitions") on March 16, 2009 (the "Petition Date"). The Debtors intend to manage their businesses as Debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

In order to enable the Debtors to operate effectively and avoid the potential adverse effects of a Chapter 11 filing, the Debtors seek certain "first day" relief from the Court.

I submit this Affidavit in support of Debtors' first day applications and motions in this Chapter 11 case. Except as otherwise indicated, all facts set forth in this Affidavit are based upon my experience and knowledge of the Debtors' operations and financial conditions, or upon information and belief. If I were called to testify, I could and would testify competently to the facts set forth herein. I am authorized by the Debtors to submit this Affidavit on their behalf.

Concurrently with the filing of the Petitions, the Debtors have filed, for the Court's approval, a number of Orders (the "First Day Orders") that the Debtors believe are necessary to enable them to operate in Chapter 11 with a minimum of disruption and loss of productivity. The Debtors respectfully request that each of the First Day Orders be entered as a critical element in achieving the Debtors' successful reorganization. A description of the First Day Orders is provided below.

### Debtors' Motion for Entry of an Order Pursuant to Sections 361 and 363 of the Bankruptcy Code Authorizing Interim and Permanent Use of Cash Collateral and Granting Adequate Protection.

The Debtors seek an order authorizing them to utilize Cash Collateral (as that term is described in the Motion) on an emergency interim basis and, thereafter, on a permanent basis, and granting adequate protection to secured creditors with an interest in such Cash Collateral.

One of the Debtors' pressing concerns is the need for the immediate use of Cash collateral pending a final hearing on the Motion. The Debtors require the use of Cash Collateral

4

in order to meet their expenses and maintain the operation of their business. Without the use of Cash Collateral, the Debtors' operations will be substantially and irreparably harmed. The continued operation of the Debtors' business is essential to its operation during this case. In order to avoid immediate and irreparable harm to the Debtors' estate, the Debtors require the use of Cash Collateral to pay, among other things, utilities, taxes, insurance, critical vendors and other ordinary business costs and expenses.

The Debtors' ordinary course operations generate Cash Collateral through the sale of gasoline, food and related items. The Lender (as the term is described in the Motion) asserts a security interest in all of the Debtors' Cash Collateral. As adequate protection for any interest in Cash Collateral which the Lender may have, the Debtors are willing to grant the Lender replacement liens in the Debtors' post-petition Cash Collateral, to the same extent, priority and validity as its pre-petition liens, if any, and only to the extent that the Debtors diminish such Cash Collateral. The proposed replacement liens should provide sufficient adequate protection to prevent any diminution in value to the collateral.

In addition, Nicolet National Bank has also asserted or may assert liens on at least some of the Debtors' Cash Collateral. To the extent that their liens are valid, they are also entitled to receive replacement liens in the Debtors' post-petition Cash Collateral, to the same extent, priority and validity as its pre-petition liens, if any, but only to the extent that the Debtors diminish such Cash Collateral.

The Debtors seek to use Cash Collateral in accordance with their proposed budget (with allowance for a 10% overage on each expense item not to exceed 10% in the aggregate), which will be submitted at the hearing held to consider the relief requested in the Motion for an initial four (4) week period and thereafter upon further order of this Court, following a final hearing on

the Motion, on a permanent basis, in accordance with its operating needs. The Debtors have estimated the amount of cash that they require access to during the next 30 days is $_____.

The Debtors need immediate authority to use Cash Collateral to fund their day-to-day operations so as to preserve the going concern value of the Debtors. I believe that the Debtors' use of Cash Collateral is absolutely essential for the Debtors' continued operations and is therefore in the best interest of creditors and this bankruptcy estate.

**Debtors' Motion Pursuant to Section 366 of the Bankruptcy Code for Entry of an Order: (1) Prohibiting Utilities from Altering, Refusing or Discontinuing Services for Pre-Petition Invoices; (2) Determining That the Utilities are adequately Assured for Post-Petition Payment; and (3) Establishing Procedures for Determining Requests for Additional Adequate Assurance.**

The Debtors will seek the entry of an Order (i) prohibiting their utility companies (the "Utility Companies")" from altering, refusing or discontinuing service to the Debtors, (ii) deeming that the Utility Companies are adequately assured of post-petition payment, and (iii) establishing procedures for determining requests by the Utility Companies for additional adequate assurance of payment.

The Utilities currently have on the average a two month security deposit for each of Debtors' accounts. The Debtors propose that this deposit is adequate for the ongoing cases and that no additional deposits should be permitted.

If a Utility Company timely objects to the entry of an order and requests additional adequate assurance which the Debtors believe is unreasonable, the Debtors shall file a motion for determination of additional adequate assurance of payment and notice of such motion for hearing (the "Determination Hearing"). In the event a Determination Hearing is scheduled, the Utility Company shall be deemed to have adequate assurance of payment until the entry of an order finding that the Utility Company is not otherwise adequately assured of future payment under

6

section 366 of the Bankruptcy Code without the need for payment of additional deposits or other security. The order entered at the Determination Hearing shall fix the amount of any additional adequate assurance payments, if any.

In the normal course of its business, the Debtors uses electricity, water, telephone, and other utility services provided by the Utility Companies. All of these utility services are essential to the safe and efficient operation of the Debtors' businesses. Continuing utility services to the Debtors is essential to their ability to sustain operations while their chapter 11 cases are pending. An interruption of utility services, no matter how brief, would severely disrupt the Debtors' business operations.

The Debtors accordingly, for the reasons stated herein and in each of the first day applications and motions, the Debtors respectfully request that the First Day Orders be approved.

Dated: March 13, 2009

_____
NAOMI ISAACSON
CHIEF EXECUTIVE OFFICER
*U.S. Acquisitions & Oil, Inc.*
*Dr. R.C. Samanta Roy Institute of Science &*
*Technology, Inc.*
*Midwest Oil of Wisconsin, LLC*
*Midwest Oil of Shawano, LLC*
*Midwest Oil of Minnesota, LLC*
*Midwest Properties of Shawano, LLC, and*
*Midwest Hotels & Motels of Shawano, LLC*

SWORN TO AND SUBSCRIBED BEFORE ME
THIS _16th_ DAY OF MARCH, 2009

_____
Notary Public

┌─────────────────────────┐
│   DARLENE SENSE          │
│   Notary Public          │
│   State of Wisconsin     │
└─────────────────────────┘

7

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA
## THIRD DIVISION

-----------------------------------------------------------------

In Re:

Bruce Eugene Scott and Carol Jean Scott,

     Debtors,

Vermillion State Bank,

     Plaintiff,

vs.

Bruce Eugene Scott,

     Defendant.

Bankruptcy 09-37597
Chapter 7 Case
Adversary

**COMPLAINT**

-----------------------------------------------------------------

Now comes forth the Plaintiff and for its cause of action against Defendant states and alleges as follows:

1.    Bruce Eugene Scott ("Scott", "Defendant" or "Debtor") filed a voluntary petition under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Minnesota on October 28, 2009 and the case is now pending in this court.

2.    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 523. This is a core proceeding.

3.    Plaintiff Vermillion State Bank (Vermillion) is a duly organized and existing banking corporation organized under the laws of the State of Minnesota with a principal place of business at 107 E. Main St., Vermillion, Minnesota.

4.    That for a period of time prior to September 2007, Midwest Oil of Minnesota LLC ("Midwest Oil") was indebted to Vermillion and Midwest Oil was in default of its Contractual Loan Obligations (the "Default") to Vermillion.

5.    That in September of 2007, Vermillion was preparing to commence collection action against Midwest Oil including replevin and foreclosure by action (the "Collection Actions").

6.    In order to induce Vermillion to defer Collection Actions against Midwest Oil, Scott, with others, offered to guarantee Midwest Oil's obligations to Vermillion and published to Vermillion Scott's Personal Financial Statement (the "PFS") dated September 7, 2007 and attached hereto as Exhibit A and incorporated herein.

7.    The PFS is a written statement within the meaning of 11 U.S.C. §523(a)(2)(B).

8.    That the PFS was materially false as follows:

    a.    The PFS listed no debt other than real estate mortgages. The Defendant's Schedule E lists unsecured student loan obligations of $122,933.50, all of which were incurred before September 7, 2007 and Schedule F lists unsecured debts of $38,219.07 of unsecured debt.

    b.    The PFS did not disclose that the real estate mortgage in favor of Adeline Hoefs were two real estate mortgages consisting of a first and second real estate mortgage and that the debt of the two exceeded approximately $120,000.00.

9.    That the PFS was a statement in writing that was materially false, for the reasons set forth above, respecting the Debtor's financial condition, or which the creditor, Vermillion, to whom the Debtor is liable for money, property, services or credit, reasonably relied and the debtor caused the PFS to be made or published with the intent to deceive.

2

10. That in reliance upon the Defendant's PFS and upon the Defendant's guaranty of the obligations of Midwest Oil, a copy of which Guaranty is attached hereto as Exhibit B and incorporated herein, Vermillion did defer Collection Actions against Midwest Oil to its detriment.

11. That as of October 28, 2009, Midwest Oil was indebted to Plaintiff in the amount of $2,007,525.18. That interest continues to accrue on the Midwest Oil debt to Vermillion.

12. Pursuant to paragraph 4 of the Guaranty, Defendant has agreed to pay all of Vermillion's attorney's fees, collection costs and other expenses in connection with the debt guaranteed. That Vermillion has incurred and will incur in the future legal fees and expenses in connection with commencing this action against Defendant.

**WHEREFORE**, that Plaintiff demands judgment against Defendant Scott as follows:

1. For a judgment declaring that Defendant's obligations under the Guaranty dated September 7, 2007 to Vermillion are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) and for a money judgment against Scott in the amount of $2,007,525.18 plus interest subsequent to October 28, 20009;

2. For Plaintiff's costs and disbursements herein including attorney's fees and expenses;

3. For such other and further relief as the court deems just and equitable in the premises.

Dated: February 8, 2010

_/e/ Michael J. Iannacone___
Michael J. Iannacone, #48719
Attorney for the Plaintiff
8687 Eagle Point Blvd.
Lake Elmo, MN 55042
(651) 224-3361
(651) 297-6187 Fax

3