**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

---

In Re:
Midwest Properties of Shawano, LLC.

        Debtor.

Chapter 11

Case File No.: _10-31515_

---

### MEMORANDUM OF LAW IN SUPPORT OF
### OBJECTIONS TO DISMISSAL

---

Debtor Midwest Properties of Shawano, LLC (hereinafter referred to as "Debtor" or

"MWP") by its attorney hereby responds to the "emergency" motion for dismissal by creditor

Fox Communities Credit Union (hereinafter referred to as "FCCU") with respect to the

allegation that Debtor has two pending matters as follows:

### FACTUAL BACKGROUND[1]

1.      On March 16, 2009 (the "First Petition Date"), Debtor MWP filed a voluntary

petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy

Code") with the United States Bankruptcy Court for the District of Delaware (the "Delaware

Bankruptcy Court"). Debtor's parent company and five affiliated entities ("Affiliates" refers to

parent company and affiliated entities) also filed for protection on the same date. Thereafter,

Debtor's parent company requested that the cases be jointly administered. Such filing became

consolidated under Case No. 10-10876-KG and involved the assets, liabilities, and issues of all

the related entities.

2.      From the First Petition Date onward, the Debtor MWP and Affiliates were

debtors-in-possession and continued to operate their businesses pursuant to Sections 1107 and

---

[1] More detailed facts regarding this matter have previously been submitted to this court via Debtor's Objection to
"Emergency" Motion to Dismiss and the Affidavit of Naomi Isaacson in support of Debtor's objections. Therefore,
Debtor has limited its explanation of facts in this memorandum to avoid unnecessary repetition.

1108 of the Bankruptcy Code. No examiner or committee of creditors was appointed in the Chapter 11 proceeding.

3. Debtor MWP and Affiliates are Delaware corporations and/or limited liability companies with assets in Minnesota and Wisconsin. The parent company is a self-supporting 501(c)(3) which obtains its funding through its business operations, which include gas stations, a racetrack and amusement park, two lodging facilities, property acquisition and management, and various small retail operations.

4. Debtor MWP and Affiliates filed for bankruptcy protection in order to reorganize their corporate entities and continue to maintain their properties and businesses so that they could continue their educational activities. At the time of the First Petition Date, the Affiliates were involved in lender-initiated litigation relating to some of their properties.

5. Through the initiation of this intensive litigation, the Affiliates directed substantially all of their efforts, and the efforts of all professionals, to litigating various creditors' claims relating to the property of the Affiliates' estate. The Affiliates engaged in this litigation in an effort to maintain the assets of the estate, thereby maximizing the value of the estate for the benefit of all creditors of the estates.

6. Despite the litigation, the Debtor MWP and Affiliates made substantial steps toward the creation of a plan of reorganization. The Debtor MWP and Affiliates engaged the services of a financial advisor for the purposes of restructuring and evaluating their businesses and properties with an eye towards reorganizing in a commercially viable manner. The Debtor MWP and Affiliates also negotiated with and reached resolutions with nearly all of its lenders.

7.     During the pendency of the first bankruptcy, the Debtor MWP and Affiliates filed their monthly operating reports timely, and met all other associated reporting obligations to the Office of the United States Trustee.

8.     On September 16, 2009 the Delaware Bankruptcy Court issued a rule to show cause *sua sponte*. A hearing on the rule to show cause was held on September 21, 2009.

9.     On September 22, 2009, the Delaware Bankruptcy Court dismissed the Debtor's and Affiliates' bankruptcy cases since they were being jointly administered. The consolidated bankruptcy filing was dismissed on September 22, 2009 without prejudice.

10.     The Bankruptcy Court cited five reasons for the dismissal. Those five alleged reasons for dismissal are:

a. Failure to file prepetition tax returns and the 2008 tax return;

b. Allegedly monthly operating reports indicated that entities are suffering continuing losses;

c. Failure to sell a gas station;

d. Failure to have a business plan; and

e. Holding cash in a gas station safe

11.     Factually and legally, the Delaware Bankruptcy Court is in error.

12.     As the Debtor's parent company is a 501(c)(3) and Debtor and Affiliates file a consolidated return, the return was not due until **November 15, 2009**. The case was dismissed on **September 22, 2009**, nearly two months before the return was due.

13.     Due to the fact that many of Debtor and Affiliates debts are cross-guaranteed, in the consolidated case, the debts were over-reported thus creating an inaccurate depiction of the true financial condition of the Debtor and affiliates.

3

14.     Over one year prior to the First Petition Date, an Affiliate of Debtor was approached by a buyer who wished to purchase a gas station owned by an Affiliate. Due to environmental issues, the Affiliate which owned the gas station was unable to sell it at that time. The Bankruptcy Court erroneously faulted Debtor and Affiliates for the failure to sell the gas station a year prior to the First Petition Date. Debtor MWP did not own the gas station and had no control over its sale.

15.     In the Delaware Bankruptcy case, Debtor MWP's and Affiliates' period of exclusivity did not expire until **October 12, 2009**. As the case was dismissed on **September 22, 2009**, prior to the expiration of the exclusivity period, Debtor MWP and Affiliates were not given an opportunity to present a plan of reorganization to the Court.

16.     To someone familiar with cash flows of certain businesses particularly gas stations, possession of $60,000 in a safe is not uncommon, illegal or a poor business practice. The cash did not belong to Debtor MWP, Debtor MWP does not own a gas station, and had no part in the decision to keep cash in the safe.

17.     The Debtor MWP and Affiliates timely filed a Notice of Appeal with the Delaware Bankruptcy Court on October 2, 2009.

18.     The appellate decision, issued on May 24, 2010 by the United States District Court for the District of Delaware, affirmed the September 22, 2009 dismissal and further dismissed the appeal. The appellate decision clearly states, "The Bankruptcy Court's September 22, 2009 Order of Dismissal is AFFIRMED." In other words, the dismissal was effective as of September 22, 2009. The Delaware District Court dismissed the Appeal by Order without opinion, and denied several pending motions relating to the Appeal.

19.     Debtor MWP and Affiliates appealed to the Third Circuit Court of Appeals.  No stay has been granted pending the appeal.

20.     On July 13, 2010, Debtor MWP only filed a voluntary petition under Chapter 11 of the Bankruptcy Code in Wisconsin.  Debtor continues to operate its properties as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in Debtor's bankruptcy case and no official committee of unsecured creditors has yet been established.

21.     On July 15, 2010, counsel Krueger[2] filed an emergency motion to dismiss pursuant to 11 U.S.C. § 109(g) erroneously asserting that Debtor MWP was in ineligible debtor because its case was dismissed within the last 180 days.

22.     Later the same day, counsel Krueger filed an Amended Ex Parte Request for Expedited Hearing on Motion to Dismiss.

23.     The following day, counsel Krueger obtained a hearing date from the court for Friday, July 23, 2010 a mere eight days from the date of filing of the Motion to Dismiss.

24.     Pursuant to Federal Rules of Bankruptcy Procedure 2002, Debtor MWP was entitled to a 21 day notice of FCCU's motion to dismiss unless the court orders otherwise.

25.     On July 23, 2010, Debtor MWP appeared via teleconference on an "emergency" hearing filed by Fox Communities Credit Union's motion to dismiss.  Thereafter, the Court made an inquiry of counsel Krueger regarding the emergency nature of their motion and determined that no emergency existed.  As no emergency existed, FCCU should not have been permitted to short-circuit the Bankruptcy Code and Rules of Procedure and continue with its motion.

---

[2] As referenced in detail in the Affidavit of Naomi Isaacson, Attorney David Van Lieshout, was appointed receiver of the two properties which are collateral for the mortgage of Fox Communities Credit Union.  David Van Lieshout's associate, Steve Krueger, has been the acting counsel and receiver of these properties since the imposition of the receivership in 2008.

However, FCCU was permitted to continue with its request in derogation of Debtor MWP's due process rights.

26.    Counsel Krueger erroneously brought the motion to dismiss pursuant to 11 U.S.C. § 109(g). The Motion to Dismiss presented no other statutory or case law authority in support of their Motion to Dismiss. Without any prior notice to Debtor, during the teleconference, counsel Krueger changed the legal authority for its Motion to Dismiss and asserted that In re Sidebottom provided the authority for his Motion to Dismiss. The Court permitted counsel to argue In re Sidebottom even though his Motion makes no reference to such legal authority. Not only did Debtor MWP not get the 21 day notice provided in Rule 2002, Debtor MWP effectively had no notice whatsoever. The Court should not have permitted counsel Krueger to so proceed when Debtor MWP had no prior notice.

27.    Thereafter, the Trustee Cramer proceeded to argue and concur with counsel Krueger that In re Sidebottom was the controlling case in this jurisdiction regarding the issue of whether Debtor had two pending cases. From the arguments presented by Trustee Cramer and counsel Krueger it appears apparent that they discussed the matter prior to the hearing.

28.    Trustee Cramer then proceeded to read to the Court the reasons set forth in the Delaware Bankruptcy Court's Dismissal Order without doing any factual investigation as to the validity or merits of those reasons or whether those reasons had anything to do with MWP. Even a cursory investigation would have revealed that the reasons set forth in the dismissal order were in error. At the time of dismissal, Debtor's tax returns were not due. Debtor was not given an opportunity to present a plan as the case was dismissed prior to the expiration of the exclusivity period. Debtor does not now and never has owned a gas station. It could not have sold a gas station nor did it have anything to do with cash being kept in a safe at a gas station. Trustee

Cramer appears to have raised these issues with the Court merely to prejudice the Court against Debtor MWP.[3]

29. In its objection to the Motion to Dismiss, Debtor MWP presented exhaustive evidence of waste being committed by counsel/acting-receiver Krueger and evidence of the conspiracy between counsel Krueger, Shawano Mayor Lorna Marquardt, and other officials. FCCU obtained the receivership on the basis that Debtor was delinquent in its payment of real estate taxes. But now, despite being under a legal obligation to do so, Krueger has failed to comply with court orders and pay the property taxes with respect to the two apartment buildings and owes in excess of $47,000. Now, due to the receiver's actions, Shawano City and County officials are attempting to collect those taxes from Debtor and have denied a license to an affiliated business due to the fact that these taxes are not paid. Despite the fact that Debtor MWP brought this to the Court's attention, the Court ignored Debtor's contentions, did not question counsel Krueger regarding the same, and directed counsel for MWP to address In re Sidebottom.

30. Both Trustee Cramer and counsel Krueger erroneously argued that In re Sidebottom stands for the proposition that a Debtor cannot have two open cases and that by the merit of having a pending appeal, Debtor has two pending cases. This Court adjourned the matter for further consideration of what constitutes two "open" cases. Both Trustee Cramer and counsel Krueger are in error with regards to the ruling in In re Sidebottom. In re Sidebottom does not stand for the proposition that Debtor has two pending cases.

31. The issues on appeal in the Delaware proceeding do not directly involve Debtor, which was such a small part of that entire filing.

---

[3] It is worth noting that Debtor has grave concerns about the impartiality it will receive from this Court particularly in light of what has transpired thus far. It has come to Debtor's attention that a colleague of this Court is a sibling of FCCU's receiver, David Van Lieshout. Counsel Krueger is Van Lieshout's associate. To avoid the appearance of impropriety, it may be proper that this matter be transferred to a different district.

32.     All assets of Debtor re-vested in Debtor once the prior bankruptcy estate was closed when the case was dismissed in September 2009.

33.     While Bankruptcy Code and case law both support Debtor's argument and belief that this Chapter 11 case may proceed despite a consolidated appeal, which included Debtor as a party for reasons discussed herein, Debtor has effectively withdrawn itself from the consolidated appeal pending in Delaware so as not to jeopardize its standing in this Court. In an abundance of caution and since none of the reasons set forth in the Delaware Bankruptcy Court's dismissal order relate to Debtor, Debtor filed a notice of withdrawal of its appeal on July 26, 2010. The same is attached hereto as Exhibit A.

## LEGAL ISSUES

I.     **THE FACTS OF THIS CASE CREATE A MATTER OF FIRST IMPRESSION IN THIS CIRCUIT THAT ARE NOT GOVERNED BY THE 7TH CIRCUIT'S HOLDING IN RE SIDEBOTTOM OR THE UNITED STATES SUPREME COURT'S HOLDING IN FRESHMAN V. ATKINS.**

II.     **MWP'S PRESENT CHAPTER 11 PETITION IS FILED IN GOOD FAITH. LEGAL ARGUMENT**

I.     **THE FACTS OF THIS CASE CREATE A MATTER OF FIRST IMPRESSION IN THIS CIRCUIT THAT ARE NOT GOVERNED BY THE 7TH CIRCUIT'S HOLDING IN RE SIDEBOTTOM OR THE UNITED STATES SUPREME COURT'S HOLDING IN FRESHMAN V. ATKINS.**

There is no provision in the Bankruptcy Code or Rules which expressly prohibits a debtor from having two bankruptcy cases open at the same time. Each case must be determined on its own merits and circumstances in accordance with applicable law. In fact, Bankruptcy Rule 1015 suggests that in some situations, a debtor may have two cases open at the same time. Bankruptcy

Rule 1015(a) states in relevant part, "[i]f two or more petitions are pending in the same court by or against the same debtor, the court may order consolidation of the cases." Fed. R. Bankr. P. 1015(a). The Editor's Comment to the Advisory Committee Note (1987) for Bankruptcy Rule 1015 states that multiple petitions filed in the same court and involving the same debtor are not an infrequent occurrence.  The venue and transfer provision of Chapter 11, Bankruptcy Rule 1014(b), implicitly authorizes concurrent Chapter 11 filings:

> If petitions commencing cases under the Code are filed in different districts by or against (1) the same debtor ... on motion filed in the district in which the first petition is filed and after hearing on notice to the petitioners and other entities as directed by the court, the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed....Bankruptcy Rule 1014(b).

It is clear from this statute that by countenancing simultaneous petitions in different districts, Congress has authorized at least some types of concurrent jurisdiction over a Chapter 11 debtor's estate.  In re Consol. Equity Properties, Inc., 136 B.R. 261, 263-264 (D. Nev. 1991).

There is no general rule against subsequent bankruptcy filings.  In re Consol. Equity Properties, 136 B.R. at 263-264.  In Johnson v. Home State Bank, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), the Supreme Court ruled that where Congress has explicitly declared some types of subsequent filings to be illegal, others are implicitly endorsed. 111 S.Ct. at 2156, citing United States v. Smith, 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991). There is no statutory directive rendering subsequent Chapter 11 filings illegal.  Consol. Equity Properties, 136 B.R. at 263-264.

In fact, the Code generally provides that no prejudice results from dismissal which would bar a subsequent bankruptcy filing. 11 U.S.C. § 349. The general rule has a single exception: prejudice does attach when the court ordering dismissal enters a specific order which bars a subsequent filing.  Consol. Equity Properties, 136 B.R. at 263-264.; Hall v. Vance, 887 F.2d

1041, 1045 (10th Cir.1989). Similarly, no provision of the Bankruptcy Code denies a discharge to a debtor where another proceeding in which he is a debtor is pending. In re Brown, 399 B.R. 162, 165 (Bankr. W.D. VA 2009).

It is undisputed that the consolidated case of which Debtor was a small part, was dismissed with no bar on re-filing. In the present case, Debtor filed the present Chapter 11 petition only after the dismissal of its prior petition was affirmed in the initial consolidated appellate decision of the United States District Court for the District of Delaware, which issued on May 24, 2010. Debtor's parent company decided to appeal the District Court's decision to the 3rd Circuit. Debtor is not a part of this consolidated appeal as it withdrew its appeal.

Pursuant to 11 U.S.C. 349(b)(3), Debtor's prior petition and its resulting bankruptcy estate has been effectively closed by the Bankruptcy Court of Delaware's dismissal of its prior petition on September 22, 2009. As of September 22, 2009, the assets of Debtor re-vested in Debtor and were no longer the part of any bankruptcy estate. Therefore, under these particular circumstances, there is no prohibition preventing Debtor's present Chapter 11 from proceeding forward.

FCCU's counsel in this proceeding cites In re Sidebottom as the controlling authority of this case. However, extensive review of both In re Sidebottom and its main authoritative case, Freshman v. Atkins demonstrates that the facts of the present case differ drastically from the facts of Freshman v. Atkins and In re Sidebottom. These cases are important to the present case only to the extent that we can distinguish them from the facts of the present case in order to understand that they do not control or determine the "law of the case" presently before this Bankruptcy Court. In order to determine the controlling law of the present case, we will take a closer look at the facts and analysis of In re Sidebottom and Freshman v. Atkins. Then we will

review relevant bankruptcy code provisions as well as cases within and without the Seventh Circuit which are on point with the facts of the present case.

**A.  The Facts and Law of _In Re Sidebottom_ and _Freshman v. Atkins_ do not apply to the present case.**

All courts citing the premise that no debtor may have two simultaneous and pending bankruptcy proceedings at the same time originate their holding from the United States Supreme Court case of Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925).  In that case the debtor filed a petition for bankruptcy in November 1915.  Within the prescribed time period, the debtor brought a motion for discharge.  The referee recommended that discharge be denied.  Thereafter, no further action was taken to resolve or otherwise conclude the matter.  Seven years later, the debtor filed a new petition for bankruptcy while the first bankruptcy petition was still pending and unresolved. Freshman, 269 U.S. at 122.

The Supreme Court  held that the pendency of the first petition in Freshman v. Atkins precluded a consideration of the second petition in respect to the same debts included in the first case, which was still pending and unresolved. Freshman, 269 U.S. at 122.  The Supreme Court further held that the first bankruptcy application, although "reported upon adversely by the referee, was still pending, and, in ordinary course, could have been considered and acted upon by the court. To ignore it, and make a second application, involving a new hearing, was an imposition upon and an abuse of the process of the court . . ." Freshman, 269 U.S. at 123-24.

The Supreme Court in Freshman, however, did not hold, on its facts, that two bankruptcy petitions could not be pending and open simultaneously; in fact Freshman never dismissed the second petition.  In re Grimes, 117 B.R. 531, 536 (9th Cir. BAP 1990); Also see, e.g., In re Strause, 97 B.R. 22, 29 (Bankr. S.D. Cal. 1989); In re Tauscher, 26 B.R. 99, 101 (Bankr. E.D. Wis. 1982).  Notably, the Bankruptcy Court for the Eastern District of Wisconsin explained in

Tauscher, "[o]ver the years, there has been a truism in bankruptcy circles that a debtor cannot have two bankruptcy cases pending at the same time," but "[a]side from the questions of good faith or possibly abuse of process, however, the court has been unable to conceive of any legal or practical reason ... as to why [he] should be barred from so filing." Tauscher, 26 B.R. at 101.

Similarly, In re Sidebottom, 430 F.3d 893 (7th Cir. 2005) involves the same type of factual circumstances as those which occurred in Freshman v. Atkins. In Sidebottom, the debtor initially filed a voluntary Chapter 7 bankruptcy petition. Subsequently, less than two weeks prior to an adversary hearing in the Chapter 7 proceeding, the debtor filed a voluntary and overlapping Chapter 13 bankruptcy petition. In re Sidebottom, 430 F.3d 893, 895-96 (7th Cir. 2005). Therefore, the prevailing issue in In re Sidebottom became whether Sidebottom was entitled to maintain an active Chapter 13 proceeding while an active Chapter 7 proceeding involving the same debts was pending. In re Sidebottom, 430 F.3d at 897. The Seventh Circuit held in Sidebottom that in keeping with the Supreme Court's holding in Freshman, simultaneous petitions as occurring under the facts of Sidebottom and Freshman are barred in this Circuit. In re Sidebottom, 430 F.3d at 897.

Upon closer review, and in keeping with the analysis of the Ninth Circuit in In re Grimes, the Seventh Circuit in Sidebottom acknowledged that Freshman did not dismiss the second petition and that it allowed the second petition with respect to the new debts, leaving the rest of the debts to be dealt with via the first petition, which was still open and pending. In re Sidebottom, 430 F.3d at 897; In re Grimes, 117 B.R. at 536.

Under different factual circumstances, in In re Jartran, Inc. the Seventh Circuit has also specifically held in direct contravention to its ruling in Sidebottom that having two cases involving the same debtor open at the same time is permissible and necessary under certain

circumstances. In re Jartran, Inc., 886 F.2d 859, 869 (7th Cir.1989), *aff'g* 87 B.R. 525 (N.D.Ill.1988), *aff'g* 71 B.R. 938 (Bankr. N.D.Ill.1987). Also in contrast to its holding in In re Sidebottom, the Seventh Circuit has held In re Salem, that a second, related bankruptcy petition (Chapter 13 in that case) following a closed Chapter 7 proceeding is valid and permissible. In re Salem, 465 F.3d 767, 772 (7th Cir. 2006). See generally Johnson v. Home State Bank, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (permitting a Chapter 13 filing after a Chapter 7 case had closed). The Seventh Circuit, in the Salem case noted that "Salem's petitions did not overlap, but rather were (barely) successive." In re Salem, 465 F.3d at 772.

### B. The applicable Bankruptcy Code provisions demonstrate that Debtor MWP has only one pending matter at the present time, namely this Chapter 11 filing.

There is no general rule against subsequent bankruptcy filings. In re Lewis & Coulter, Inc., 159 B.R. 188, 191 (Bankr. W.D. Pa. 1993). In Johnson v. Home State Bank, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), the Supreme Court ruled that where Congress has explicitly declared some types of subsequent filings to be illegal, others are implicitly endorsed. 111 S.Ct. at 2156, *citing* United States v. Smith, 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991). There is no statutory directive rendering subsequent Chapter 11 filings illegal. Consol. Equity Properties, 136 B.R. at 263-264.

In fact, the Code generally provides that no prejudice results from dismissal which would bar a subsequent bankruptcy filing. 11 U.S.C. § 349. The general rule has a single exception: prejudice does attach when the court ordering dismissal enters a specific order which bars a subsequent filing. Consol. Equity Properties, 136 B.R. at 263-264.; Hall v. Vance, 887 F.2d 1041, 1045 (10th Cir. 1989). Unless the dismissal was with prejudice, the debtor may file

another bankruptcy petition. *See* <u>*In re Income Property Builders, Inc.,* 699 F.2d 963, 965 (9th Cir.1983)</u>.

With regard to whether Debtor has one or two open and pending cases at present, we must first turn to the U.S. Bankruptcy Code. Pursuant to the bankruptcy code, the estate in a Chapter 11 proceeding continues to exist until the re-organization plan is confirmed pursuant to 11 U.S.C. § 1141(b) or until the case is dismissed as set forth in 11 U.S.C. § 349(b)(3). (Contrast this to a Chapter 7 proceeding where the bankruptcy estate continues to exist until a Chapter 7 case is closed (*See* 11 U.S.C. 554(c)) or dismissed (11 U.S.C. 349(b)(3)). Pursuant to 11 U.S.C. § 349(b)(3), one of the effects of dismissal of a bankruptcy case is to re-vest the property of the estate in the entity in which the property was vested immediately before commencement of the case. 11 U.S.C. 349(b)(3). Section 349 serves to negate the consequences of filing the bankruptcy petition where the case is dismissed without discharge. <u>In re Nash</u>, 765 F.2d 1410 (9th Cir. 1985). Therefore, in the present case, there is only one open and pending matter as the bankruptcy estate created by MWP's previous filing has completely re-vested in Debtor.

The single estate rule is a bankruptcy rule that "property cannot be an asset of [2] estates simultaneously." <u>Id.</u> The BAP in <u>Grimes</u> noted that the BAP had followed the single estate rule in <u>In re Berg</u>, 45 B.R. 899 (9th Cir. BAP 1984). The single estate rule is better articulated in <u>Associates Financial Services Corp. v. Cowen</u>, 29 B.R. 888, 894 (Bankr. S.D. Ohio 1983): The filing of two simultaneous bankruptcy petitions is contrary to the obvious contemplated function of the Bankruptcy Code to resolve debtors' affairs by administration of a debtor's property as a single estate under a single Chapter within the Code. The Bankruptcy Code provides different discharge remedies in different Chapters, and such remedies are intended to be exclusive of each estate. <u>Associates Financial Services Corp. v. Cowen</u>, 29 B.R. 888, 894 (Bankr. S.D. Ohio

1983). This "single estate rule" prohibits concurrent cases on the basis that the "filing of simultaneous petitions is contrary to the obvious contemplated function of the Bankruptcy Code to resolve a debtor's financial affairs by administration of a debtor's property as a single estate under a single chapter within the code." In re Brown, 399 B.R. at 167-168. Turner v. Citizens Nat'l Bank of Hammond (In re Turner), 207 B.R. 373, 378 (2d Cir. BAP 1997).

The Seventh Circuit has held that a case is no longer open and pending upon dismissal of the underlying case, even though there may be post-dismissal proceedings, motions, and appeals filed following the dismissal. Chicago Tunnel Terminal Corporation v. Rutland Transit Company, 256 F.2d 316, 317-318 (7th Cir. 1958). Once a case is dismissed, the assets re-vest in the Debtor. At that point, the case ceases to be pending or open. In addition, the bankruptcy court in In re Lundquist held that the filing of a motion to vacate an order of dismissal does not re-create a "pending" case for purposes of 11 U.S.C. § 362(c) until disposition of the motion. In re Lundquist, 371 B.R. 183, 186 (Bankr. N.D. Texas 2007). The bankruptcy court In re Lundquist concluded in line with the bankruptcy code provisions that "pending" and open cases do not include dismissed cases in which a motion to vacate the dismissal has been filed. Lundquist, 371 B.R. at 188.

Reading the Bankruptcy Code in conjunction with the "single estate rule", Debtor is well within its rights to file the present Chapter 11 Petition as all assets of Debtor are vested in a single estate, which is before this Court as part of the present proceeding. There cannot be any violation of the single estate rule because the Chapter 11 estate in Debtor's first case ceased to exist at the time that its Petition was dismissed in September 2009.

C. **The Bankruptcy Court for the District of Maryland has held on identical facts that a Chapter 11 petition is properly filed notwithstanding the pendency of an appeal of a prior involuntary dismissal in another jurisdiction.**

Under facts nearly identical to this case, the Bankruptcy Court for the District of Maryland held that the Bankruptcy Code does not specifically preclude a new petition under the Code while an appeal from an involuntary dismissal under the Act is pending. In re Macon Uplands Venture, 2 B.R. 421, 426-27 (Bankr. D. Md. 1979). It further held that a Chapter 11 petition under the Code was properly filed in its court notwithstanding the pendency of an appeal of a prior dismissal in Georgia. Id.

The Court in Macon Uplands Venture found that the Appellate Court's jurisdiction in Georgia was solely for the purpose of determining the appeal regarding the involuntary dismissal. In re Macon Uplands Venture, 2 B.R. at 426. Further it found that if the Bankruptcy Court's Order of Dismissal were reversed and the case remanded for the purpose of the continuation of the Chapter XII proceeding in order to consider a plan of arrangement proposed by the Debtor or any secured creditor, then, under rules of comity, the court could abstain from jurisdiction in accordance with § 305 of the Bankruptcy Reform Act. Unless and until then, the bankruptcy filing in the new venue would continue. In re Macon Uplands Venture, 2 B.R. at 426-27.

Therefore, under the present circumstances of this case as outlined in the Affidavit of Naomi Isaacson attached hereto on behalf of Debtor MWP, it is necessary and appropriate and in compliance with the Bankruptcy Code that MWP's present Chapter 11 petition be allowed to proceed so that MWP may achieve its desired re-organization. As a practical matter, it is likely that Debtor will be discharged from bankruptcy before a decision is reached by the Third Circuit with respect to all of the affiliated entities that were part of the consolidated filing.

**D.  Cases from various jurisdictions involved in pending appeals under facts similar to MWP's case support the premise that MWP's present Chapter 11 filing is**

**valid and may proceed, and that by virtue of the present filing MWP's pending appeal has been deemed moot.**

Under the bankruptcy mootness rule, an appeal of a bankruptcy case is moot if a case is dismissed without a stay in effect. In re Onouli-Kona Land Co., 846 F.2d 1170 (9th Cir. 1988); In re Weston, 110 B.R. 452 (E.D. Cal. 1989). In general, a bankruptcy appeal, like any other appeal, becomes moot if the appellate court is unable to grant effective relief because of events occurring during the appeal. In re DeLorean Motor Co., 755 F.2d 1223 (6th Cir. 1983). In In re J.B. Lovell Corporation, 876 F.2d 96, an involuntary petition for relief in Chapter 7 was filed by a creditor against the debtor. The bankruptcy court concluded that the creditor's claim was not the subject of bona fide dispute and ordered the debtor to make certain filings. The debtor appealed that order to the district court and at the same time filed a motion to convert the Chapter 7 proceeding to one in Chapter 11. The motion to convert was granted. The district court concluded that the appeal before it with respect to the Chapter 7 proceeding had become moot, and the Eleventh Circuit affirmed that conclusion. J.B. Lovell Corporation, 876 F.2d at 98.

In another case, a bankruptcy court noted that filing a second case rather than taking an appeal in the first case circumvents the appeal process. In re Standfield, 152 B.R. 528 (Bankr.N.D.Ill.1993) In an unpublished case, the 6th Circuit held, "it follows, that allowing an appeal from the dismissal of the first petition in bankruptcy to proceed after the debtor has elected to proceed under another chapter is a waste of the finite appellate resources and circumvents a legitimate bankruptcy proceeding. Therefore, this appeal shall be dismissed as moot." In re Gateway North Estates, Inc., 39 F.3d 1181, 1994 WL 610167 (6th Cir. 1994). (copies attached)

Pursuant to prevailing case law on point with the circumstances of Debtor MWP's case, MWP should at worst be dismissed from the consolidated appeal pending before the 3rd Circuit

as MWP's present filing has made its participation in the consolidated appeal moot. In re DeLorean Motor Co., 755 F.2d 1223. In re J.B. Lovell Corporation, 876 F.2d 96 (11th Cir. 1989). Recognizing this, Debtor is no longer a party to the appeal in Delaware.

In summary, the facts and circumstances surrounding this case prohibit a finding by this Court that Debtor's case should be dismissed due to having two pending cases. The facts of this case are clearly distinguishable from the facts as presented in In re Sidebottom and in Freshman v. Atkins. As dictated by the bankruptcy code, upon dismissal, the assets of the bankruptcy estate revest in the entity which owned the assets immediately prior to filing. While there is no ruling in the Seventh Circuit on this issue, cases from other jurisdictions on identical facts indicate the Debtor does not have two open cases. The effect of re-filing, made its appeal moot. Furthermore, in an abundance of caution, Debtor dismissed its appeal as the issues presented on appeal did not related to Debtor and Debtor is not a necessary party to the appeal.

## II.    MWP'S PRESENT CHAPTER 11 PETITION IS FILED IN GOOD FAITH.

Although not specifically provided for under 11 U.S.C. § 1112(b), good faith is recognized as a prerequisite to filing a bankruptcy case under chapter 11 of the Bankruptcy Code. In re Madison Hotel Associates, 749 F.2d 410, 426 (7th Cir.1984). According to 11 U.S.C. § 1112(b), "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, if the movant establishes cause." The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 expanded the list of causes set forth in 11 U.S.C. § 1112(b)(4) from ten to sixteen.

Although **bad faith** is not one of the sixteen grounds for dismissal promulgated in 11 U.S.C. § 1112(b)(4), several circuit court opinions have recognized and affirmed the authority of bankruptcy courts to dismiss Chapter 11 cases that fail to meet a good faith standard. In Matter

of Strug-Div., LLC, 375 B.R. 445, 448-449 (Bankr. N.D. Ill. 2007). However, the **Movant** seeking to dismiss a Chapter 11 case for cause based on lack of good faith in filing bears the burden of proving by a preponderance of the evidence that the debtor filed the bankruptcy case in **bad faith**. 11 U.S.C. § 1112(b); In re Madison Hotel Associates, 749 F.2d at 426; see also In re Dilling, 322 B.R. at 360; In re Local Union 722 Intern. Broth. of Teamsters, 414 B.R. 443, 52 Bankr. Ct. Dec. (CRR) 62 (Bankr. N.D. Ill. 2009).

"... [D]enial of access to bankruptcy relief at the initial stages of the proceeding are inherently drastic and should not be employed as an easy alternative to other post-petition creditor remedies." In re Dilling, 322 B.R. at 360 (quoting In re Fox, 232 B.R. 229, 237 (Bankr.D.Kan.1999)). In ruling on a motion to dismiss for lack of good faith, courts must be mindful of, and attempt to preserve, the balance of interests fashioned by Congress under Chapter 11 of the Bankruptcy Code, including a policy of open access to the bankruptcy process. *See, e.g.,* In re Johns-Manville Corp., 36 B.R. 727, 735-37 (Bankr.S.D.N.Y.1984); In re Int'l Oriental Rug Ctr., Inc., 165 B.R. 436, 442 (Bankr. N.D. Ill. 1994). As opined in In re Schlangen, 91 B.R. 834, 837 (Bankr.N.D.Ill.1988), the Court must be careful not to deny the protection of the Bankruptcy Code to a debtor whose legitimate efforts at financial rehabilitation may be hidden among derivative benefits (such as the delay of creditors resulting from the automatic stay) that, if viewed alone, might suggest **bad faith**. In Matter of Strug-Div., LLC, 375 B.R. 445, 448-449 (Bankr. N.D. Ill. 2007)

In In re Schlangen, 91 B.R. 834, 837 (Bankr. N.D. Ill.1988), the Court stated that Chapter 11 was designed by Congress to prevent waste and reduction in assets that result from unnecessary liquidation. Congress meant to encourage financial restructuring and to re-establish efficient business operations with the goals of permitting greater payments to creditors than

could otherwise be made, while also preserving jobs and shareholders' interest. *See, e.g.,* In re HBA East, Inc., 87 B.R. 248, 259 (Bankr.E.D.N.Y.1988), *citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. at 220-21 (1977), *reprinted in* 1978 U.S.C.C.A.N. pp. 5787, 5963, 6179. The good faith standard is the bankruptcy court's equitable mechanism for assuring that a Chapter 11 case has at least the potential to serve those purposes. Schlangen, 91 B.R. at 837.

A determination of **bad faith** in filing a bankruptcy case is made by considering the totality of the circumstances by examining both objective and subjective factors. In re Original IFPC Shareholders, Inc., 317 B.R. 738, 750 (Bankr.N.D.Ill.2004). In re South Beach Securities, Inc. 341 B.R. 853, 856-57 (N.D.Ill.2006), sets forth a nine part test for determining whether a Chapter 11 petition was filed in **bad faith** . Those factors include whether:

> 1) [T]he debtor has any assets; 2) the debtor has recently transferred assets; 3) the debtor has any employees; 4) the debtor has any cash flow to sustain reorganization; 5) the debtor has any chance of confirming a reorganization plan; 6) the debtor and one of its creditors have reached a standstill in state court litigation; 7) the debtor is trying to delay its creditors or reduce their rights; 8) there are allegations of wrongdoing by the debtor or its principals; or 9) bankruptcy offers the only possibility of preventing the loss of property.

The opinion in South Beach pulled these factors from in In re Int'l Oriental Rug Ctr., Inc., 165 B.R. 436, 442 (Bankr. N.D. Ill. 1994). (citing In re Little Creek Development Co., 779 F.2d 1068, 1072-73 (5th Cir. 1986)). Neither South Beach nor Int'l Oriental Rug Center provides any framework for analyzing when some of the nine factors indicate **bad faith**. "Congress has not specified that any of the factors listed in South Beach and other cases constitute **bad faith**, and we as judges cannot rewrite Congress' intent." In Matter of Strug-Div., LLC, 375 B.R. 445, 448-449 (Bankr. N.D. Ill. 2007).

The key test of good faith in Chapter 11 is whether the debtor has proposed or can propose a legally and economically feasible plan of reorganization. In Matter of Strug-Div.,

LLC, 375 B.R. at 448-449. *See* <u>Marsch v. Marsch</u>, 36 F.3d 825, 828 (9th Cir. 1994). ("The test is whether a debtor is attempting to unreasonably deter and harass creditors *or attempting to effect a speedy, efficient reorganization on a feasible basis."*) (emphasis added). In other words, the question is whether the case and possible plan serve a valid reorganizational purpose. <u>In re SGL Carbon Corp.</u>, 200 F.3d 154, 162 (3rd Cir. 1999). If not, then the case was filed only to harass and delay creditors, and therefore was filed in **bad faith**. <u>Id</u>.

The factors listed in <u>South Beach</u> and other cases may be relevant to determine whether a viable plan of reorganization is in the offing. Absence of assets, lack of employees and negative cash flow may show that a plan is not economically or legally feasible. Pre-bankruptcy wrongdoing by the principals of a debtor may show them to be unreliable or incompetent managers, thereby casting doubt on any plan they propose. <u>In Matter of Strug-Div., LLC</u>, 375 B.R. 445, 448-449 (Bankr. N.D. Ill. 2007). In <u>In re Schlangen</u>, 91 B.R. 834, 837 (Bankr.N.D.Ill.1988), added another test: whether the Chapter 11 case was being used as a litigation tactic in essentially a two-party dispute, where the primary purpose for filing the bankruptcy was to confer federal jurisdiction on what otherwise would be a two-party dispute involving issues of state law, and where there was no possibility of rehabilitation of debtor's business. None of these factors, however, is determinative of bad faith.

Good faith or the lack thereof is determined by objective standards and not the subjective intent of the debtor. *Id.; See generally* <u>In re Mandalay Shores Cooperative Housing Assoc., Inc.</u>, 63 B.R. 842 (N.D.Ill.1986). The existence of one of these factors will not obligate the court to dismiss the petition for bad faith. Instead, the facts viewed in their totality must show that the case serves predominately or exclusively illegitimate purposes to warrant dismissal for bad faith.

In re Schlangen, 91 B.R. 834, 837 (Bankr. N.D. Ill. 1988) (citing In re Little Creek Development Co., 779 F.2d at 1072).

Dismissal of Chapter 11 case for cause under 11 U.S.C. § 1112(b) on grounds that petition was filed in bad faith is matter for Bankruptcy Court's discretion and issue of good faith is factual and will often require introduction of evidence. In re Stolrow's Inc., 84 B.R. 167, 17 Bankr. Ct. Dec. (CRR) 465 (B.A.P. 9th Cir. 1988).

Based on the extensive case law with regard to evaluating good faith or bad faith under the "totality of the circumstances", the facts surrounding Debtor second bankruptcy demonstrate definitively that Debtor has filed this present Chapter 11 proceeding in good faith, that Movant has the burden of establishing that it was not filed in good faith, and that Debtor has the right to an evidentiary hearing on the issue. An analysis of the various factors set forth in cases from this district are as follows:

1. **Whether the debtor has any assets**. The debtor has many assets as reflected on the schedules filed in this case. Debtors assets total in excess of $5 million.

2. **Whether the debtor has recently transferred assets**. No assets have been transferred.

3. **Whether the debtor has any employees**. Debtor has employees as do the multiple tenants which lease the properties from Debtor.

4. **Whether the debtor has any cash flow to sustain a reorganization**. Debtor has cash flow to sustain a reorganization.

5. **Whether debtor has any chance of confirming a reorganization plan**. It is apparent from Debtor's equity that Debtor has a high likelihood of confirming a successful plan of reorganization.

6. **Whether debtor and one of its creditors have reached a standstill in state court litigation**. MWP has treated all of its creditors as forthrightly as possible. As indicated earlier and in the Affidavit of Naomi Isaacson, this also includes FCCU with whom MWP has no direct contractual relationship. In fact, MWP attempted to negotiate with FCCU as soon as it learned that the sellers under the land contract had fraudulently stopped paying FCCU's

mortgage. That negotiation ended disastrously when FCCU's representatives crassly and rudely announced they had no intention to work with MWP due to their belief that MWP is a "cult" organization. Now FCCU demands even at the expense of this Court that its predatory and illegal actions should be allowed to come to fruition via the dismissal of this bankruptcy proceeding without any due process of law for MWP.

7. **Whether debtor is trying to delay its creditors or reduce their rights**. Debtor is not trying to reduce the rights of its creditors. As outlined more fully in the Affidavit filed in support of the original objection to the motion to dismiss, the receiver has been in control of the assets, all revenues and refused to pay any expenses. Debtor is the only party suffering harm from the current state of affairs.

8. **Whether there are allegations of wrongdoing by the debtor or its principals.** The erroneous finding of the Delaware Bankruptcy Court did not relate to any conduct of Debtor.

9. **Whether the bankruptcy offers the only possibility of preventing the loss of property.** Due to the illegal conduct of the receiver and Fox Communities Credit Union, bankruptcy does offer the only possibility of preventing the unlawful sale of property which should be used for the benefit of all creditors of the estate.

10. **Whether the bankruptcy is being used as a litigation tactic in a two-party dispute**. Debtor has many lenders and creditors as reflected on the schedules. This is not a two-party dispute. Additionally, Debtor has materially improved its financial condition since the last filing in Delaware.

Finally, Debtor MWP's prior bankruptcy filing has absolutely no negative bearing on the present case. That bankruptcy estate was fully dismissed and assets re-vested in Debtor MWP prior to the present filing. Pursuant to the bankruptcy code, the prior case and bankruptcy estate was deemed closed when the bankruptcy court issued its Order of Dismissal. 11 U.S.C. § 349(b)(3). Therefore, the present filing does not materially hinder the efficient administration of the debtor's estate in any way, and such present filing has been made in good faith and without any intent to abuse the bankruptcy process. Transamerica Credit Corp. v. Bullock, 206 B.R. 389, 393 (Bankr. E.D. Va. 1997).

**CONCLUSION**

WHEREFORE, Debtor respectfully requests that this Court enter an Order denying

FCCU's inappropriate expedited motion to dismiss and amended motions in their entirety.

Dated this 29th day of July, 2010.

BRUCE E. SCOTT LAW FIRM

   /s/ Bruce E. Scott
Bruce E. Scott, ID No. 0316428

204 E. Main Street
PO Box 46
New Prague, MN 56071
Phone: (952) 758-4761
Fax: (952) 758-7081

# EXHIBIT A

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
## NO. 10-2535

In re:

       Dr. R.C. Samanta Roy Institute of Science & Technology, Inc., *et al.*

                                                             Appellants

## PRAECIPE TO WITHDRAW APPEAL OF
## MIDWEST PROPERTIES OF SHAWANO, LLC

TO THE CLERK OF THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT:

       Kindly mark as withdrawn the Notice of Appeal and Appeal filed on behalf of Midwest Properties of Shawano, LLC in the above-captioned matter.

                      Respectfully submitted,

                      **COHEN, SEGLIAS, PALLAS, GREENHALL**
                      **& FURMAN, P.C.**

By:                                 
                    **Steven D. Usdin Esq. (PA ID 36381)**
                    30 South 17th Street, 19th Floor
                    Philadelphia, PA 19103
                    (215) 564-1700
                    *Attorneys for the Appellants*

Dated: July 26, 2010

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**
**NO. 10-2535**

In re:

        Dr. R.C. Samanta Roy Institute of Science & Technology, Inc., *et al.*

Appellants

**CERTIFICATE OF SERVICE**

    I, Steven D. Usdin, Esquire, hereby certify that on the 26th day of July, 2010, a true and

correct copy of the foregoing *Praecipe to Withdraw Appeal of Midwest Properties of Shawano,*

*LLC*, was served upon the following via electronic mail, electronic filing, hand-delivery,

facsimile, and/or United States mail, postage prepaid:

| | |
|---|---|
| Office of the U.S. Trustee<br>Joseph J. McMahon, Jr., Trial Attorney<br>844 King Street, Suite 2207<br>Wilmington, DE 19801 | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>for the District of Delaware<br>824 North Market Street, 6th Floor<br>Wilmington, Delaware 19801 |
| Susan Kaufman, Esquire<br>Cooch & Taylor, PA<br>1000 West Street, 10th Floor<br>The Brandywine Building<br>Wilmington, DE 19899<br>Facsimile: 302.984.3939<br>skaufman@coochtaylor.com<br>*Counsel for the City of Shawano* | Ian Connor Bifferato, Esquire<br>Kevin Collins, Esquire<br>Bifferato LLC<br>800 North King Street, Plaza Level<br>Wilmington, DE 19801<br>Facsimile: (302) 429-8600<br>cbifferato@bifferato.com<br>kcollins@bifferato.com<br>*Counsel for M & I Marshall & Ilsley Bank* |
| Gary Seitz, Esquire<br>Rawle & Henderson LLP<br>300 Delaware Avenue, Suite 1015<br>P.O. Box 588<br>Wilmington, DE 19899-0588<br>Facsimile: (302) 778-1400<br>*Counsel for Integrity First Bank* | Kevin S. Mann, Esquire<br>Cross & Simon, LLC<br>913 North Market Street, 11th Floor<br>P.O. Box 1380<br>Wilmington, DE 19899-1380<br>Facsimile: 302-777-4224<br>kmann@crosslaw.com<br>*Counsel for American Bank of St. Paul* |

2

Glenn A. Brown, DMD, Esquire
Real World Law, PC
916 North Union Street, No. 2
Wilmington, DE 19805
glenn.brown@realworldlaw.com
*Counsel for Vermillion State Bank, N.A.*

William F. Taylor, Jr., Esquire
Kate Roggio Buck, Esquire
McCarter & English LLP
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE 19801
Facsimile: 302-984-6399
kbuck@mccarter.com
*Counsel for Southwest Guaranty, Ltd.,*
*Green Mountain Finance Fund, LLC,*
*Carlyle Financial, LLC, and*
*Southwest Guaranty Partners, LLC*

**COHEN, SEGLIAS, PALLAS, GREENHALL**
**& FURMAN, P.C.**

By: _____
/Steven D. Usdin Esq. (ID No. 36381)
30 South 17th Street, 19th Floor
Philadelphia, PA 19103
(215) 564-1700
*Attorneys for the Appellants*

Dated: July 26, 2010

3

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

**Third Circuit Court of Appeals**

**Notice of Docket Activity**

The following transaction was filed on 07/26/2010

**Case Name:**      In Re: Dr. R C Samanta Roy, et al
**Case Number:**   10-2535
**Document(s):**    Document(s)

**Docket Text:**
ECF FILER: Withdraw of notice of appeal by Steven D. Usdin, Esquire on behalf of Appellant Midwest Prop of Shawano LLC. Certificate of Service dated 07/26/2010. (SDU)

The following document(s) are associated with this transaction:
**Document Description:** Praecipe to Withdraw Appeal of Midwest Properties of Shawano, LLC
**Original Filename:** 3d Cir - Praecipe to Withdraw MPSH.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1107201326 [Date=07/26/2010] [FileNumber=3056827-0]
[6a656b911f08a37b19bc4f2f403c03f0a5c892ec648d177529b0147df96702aca71ae30bc2362578fe9a3d3593b6470ba0d8c9965a87e8895166b5593cecd14b]]

**Document Description:** Certificate of Service of Praecipe to Withdraw Appeal of Midwest Properties of S
**Original Filename:** 3d Cir - Praecipe to Withdraw MPSH COS.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1107201326 [Date=07/26/2010] [FileNumber=3056827-1]
[b36f227168953f5d6a06ebad4c05027e7bb8d63468ad03d414d09a5817b419addcb3d28d4ea039a0c3bfaf4ac07099ed4bee4cd0556cfdf55bbb0b76c201320e]]

**Notice will be electronically mailed to:**

McMahon, Joseph J., Jr.
Taylor, William F., Jr.
Brown, Glenn A.
Beste, Robert K., Jr.
Usdin, Steven D.
Mann, Kevin S.
Marshall, Kathleen C.
Buck, Kate R.

The following information is for the use of court personnel:

**DOCKET ENTRY ID:** 3056827
**RELIEF(S) DOCKETED:**
**DOCKET PART(S) ADDED:** 4268109, 4268110, 4268111